SMITH *v.* BROWN, executor.

1. It is, under that portion of the constitution embodied in section 4995 of the code, essential to the validity of a judgment rendered in an attachment case for the purchase money of land, that the

defendant in attachment should have notice of the proceeding. A mere entry by the sheriff on the attachment, that he had levied the same upon the land, followed by another entry stating that he had "notified defendant of the above levy by mail," does not amount to such notice; nor is this, without more, sufficient to constitute a legal levy of the process.

2. It was error to sustain a demurrer to an affidavit of illegality to a judgment rendered in such a case, the affidavit alleging, in substance, that when the attachment was sued out the defendant was in possession of the land; that he had never been served with any "copy of the suit against him," or with any process or notice; that he did not appear in the case; that he has a valid defense to the claim on which the judgment was rendered (setting it forth); that there was never any levy of the attachment, and that he had no notice, by mail or otherwise, of the levy of the same or of the attachment proceedings until after the judgment against him thereon had been rendered.

August 16, 1895. Brought forward from the last term.

Affidavit of illegality. Before Judge BUTT. Muscogee superior court. November term, 1893.

THORNTON & McMICHAEL, for plaintiff in error.
WHEELER WILLIAMS, *contra.*

LUMPKIN, Justice.

The levy of an execution issued upon a judgment rendered in an attachment case, which was begun by an alleged levy upon the defendant's land, was met by an affidavit of illegality, the substance of which is above set forth. The question for our determination is, whether or not the affidavit ought to have been sustained.

The proposition that our code neither provides for, nor renders necessary, any notice to the defendant in an attachment proceeding, is not correct. If it were so, it would seem to follow inevitably, that our attachment laws are violative of the constitutional provision which declares that no person shall be deprived of his property without due process of law. We do not, as we understand these laws, regard them as unconstitutional. Actual notice by personal service is not indispensable, but the requirements of the constitution are met by provi-

sion for constructive notice. Our attachment laws doubt-less contemplate that this kind of notice will result from a seizure of the defendant's property, on the idea that from such seizure he will be sure to gain information of the pending attachment proceedings. Without a legal seizure, evidently there can be no such constructive no-tice; and therefore, the levy of an attachment, to be effectual as notice of a pending suit, must amount, in a legal sense, to a seizure of the defendant's property.

There is no difficulty in making an actual seizure of personal chattels; but owing to the difficulty of making such a seizure of land, the law has invented the fiction of constructive seizure, which may be accomplished in many ways. For instance, the officer, armed with the process, may enter upon the land, exhibit his warrant of authority to the owner or the tenant in possession, at the same time declaring his intention of levying the writ in his hands, and thereby reducing the possession of the property to the custody of the court. Or, as is sometimes provided by statute, when the land sought to be seized is vacant, the officer may enter and proclaim his act by posting notices of seizure upon each separate parcel. These illustrations are by no means exhaustive, for the statutes of several of the States of the Union pro-vide various other methods of accomplishing the con-structive seizure of land.

As to the present case, it is enough to say that the at-tempt to levy made by the officer does not come within any definition of constructive seizure to be found in the books. His effort to proclaim to the owner his intention of executing the right of seizure conferred upon him by the writ in his hands proved nugatory, because the letter addressed to the owner and sent by mail never reached its destination. It is, according to the best authorities, essential not only that there should be an intention to levy, but that there should also be some sort of publica-

tion of this fact. In other words, it was incumbent upon the officer to effectually announce in some way his intention to levy, and the execution of that intention. As it was, his intention remained sealed in his own breast, or, literally speaking, in a sealed envelope; for it does not appear that he communicated or disclosed such intention in any other manner; and therefore, one of the essential ingredients of a levy of this kind, viz: publication, was wanting. Until the officer's intention became, in some way which the law recognizes, properly published, not only was there no legal seizure, but the notice incidental to seizure was not given to the defendant in attachment.

The foregoing, so far as we are now advised or remember, is in harmony with the practice heretofore prevailing in this State and with the previous decisions of this court, unless at variance with those in which it was held that the requirement in section 3643 of the code, as to giving notice of the levy of an execution on land to the tenant in possession, was directory only. There is no inevitable conflict, for at least three good reasons. First, the defendant in execution has already had his day in court as to the question whether or not there shall be a judgment against him, and after judgment he may naturally expect that his property will be levied upon. There is occasion for him to be on the lookout for a levy. He can, if the judgment is valid, no longer dispute the plaintiff's lien; and the levy is not, in any sense, made in order to carry him to court to try an issue. It is only for the purpose of preventing it from proceeding illegally that the defendant may again be heard, and ordinarily he will be sufficiently on the alert to secure this right. Secondly, in the absence of any actual notice of the levy under the provisions of section 3643, the law provides for constructive notice which it deems sufficient. Section 361, par. 4, of the code makes

it the duty of sheriffs to "keep an execution docket, wherein they must enter a full description of all executions delivered to them, the dates of their delivery, together with all their acts and doings thereon, and have the same ready for use in any court of their county." The effect of the law just quoted is to provide for a constructive seizure of land by virtue of an execution, without actual notice to the owner or tenant in possession, and to render such seizure operative as a valid levy by furnishing a means for giving public notice on the execution docket to such owner or tenant—and, indeed, to all the world—of what the sheriff has done. There is no such provision for making a public record of the levy of attachments. The law treats the declaration which the officer makes by having his entry published on the execution docket, as equivalent to an actual entry upon the land and seizure of it. Unquestionably, under all the authorities, this provision is a valid one, and compliance with it constitutes a perfectly good and valid levy. And thirdly, all sales of land under execution must be advertised in a newspaper for at least 28 days, and this is another very effectual means of putting the owner on notice of what is being done with his property; but there is no provision in our law for thus advertising the fact that an attachment has been levied upon realty.

It is obvious that section 3643 would not, even if strictly obeyed, secure in every instance actual notice of the levy to the defendant or tenant in possession, for transmission by mail might often fail to accomplish this result. While, therefore, this court very properly treated this section as raising a duty on the part of the sheriff for a, breach of which, with consequent loss to the defendant, the sheriff would be liable, it held, and we think wisely, that as the section was not so framed as to make actual notice indispensable, such notice was

not essential to the making of a valid levy by constructive seizure.

As to levies upon land under writs of attachment, there is, as stated above, no provision (as in the case of executions) for rendering the constructive seizure complete by an entry upon a docket kept for public inspection. Such a provision could, of course, have been made; and if it had been, it would not, perhaps, be necessary for the officer to enter upon the land at all, but the entry of his levy upon the process and upon the public docket might suffice. We think it quite certain that in the absence of any such provision as to attachments, the officer must either actually enter upon and take physical possession of the land, or at least give the defendant, or person in possession, actual written notice, in order to render "the levy" such notice of the pending attachment proceedings as will render a judgment therein binding upon the defendant.

In the case of *Guernsey, Bartram & Hendrix* v. *Reeves*, 58 *Ga.* 290, it was held that a statement in a sheriff's entry of levy on land, that a copy of the levy had been served upon a claimant in possession thereof, was not binding upon the latter, as the law did not require notice to be given to a claimant who was in possession of the property, as it does when the sheriff levies an execution on land. This is quite true; but the court did not then have before it the question with which we are now dealing, nor did it then decide anything as to what would be essential to the validity of a levy for the purpose of making it legal and sufficient notice of a pending action.

In the case now before the court, there was neither personal notice to the defendant, nor any valid seizure of the land; and consequently, he had no notice of any kind of the attachment suit, and was not concluded by the judgment rendered therein. For the want of notice

to the defendant, the court was without jurisdiction to render that judgment. The illegality was good, and ought to have been sustained. *Judgment reversed.*